IN THE COURT OF
CRIMINAL APPEALS

                                   OF
TEXAS

 

                                                                              

                                                               NO.
PD-1932-04



 

 

                                          KEITH LASHONE HOGANS, Appellant

 

                                                                             v.

 

                                                        THE
STATE OF TEXAS

 



                   ON APPELLANT=S
PETITION FOR DISCRETIONARY REVIEW

                               FROM
THE FOURTEENTH COURT OF APPEALS

                                                             HARRIS  COUNTY



 

Keller,
P.J., filed a dissenting opinion.

 

                                                                              

I would hold that the scope of appellate
jurisdiction after adjudication depends upon the relief sought:  appellate
courts do not have jurisdiction over claims that seek to overturn the trial
court=s adjudication
of guilt, but do have jurisdiction over claims that seek a new punishment
hearing.  This rule upholds the plain language of the statute and is easy to
apply.

                                                                A.
Prior Caselaw

Article
42.12, '5(b) provides:








On violation of a
condition of community supervision imposed under Subsection (a) of this
section, the defendant may be arrested and detained as provided in Section 21
of this article.  The defendant is entitled to a hearing limited to the
determination by the court of whether it proceeds with an adjudication of guilt
on the original charge.  No appeal may be taken from this determination.  After
an adjudication of guilt, all proceedings, including assessment of punishment,
pronouncement of sentence, granting of community supervision, and defendant's
appeal continue as if the adjudication of guilt had not been deferred.[1]  


 








Caselaw
has often been imprecise in its phrasing of the prohibition against appeal but
has always reached results consistent with the Arelief
sought@ rule.  The
issue was first addressed in Williams v. State, where the defendant
challenged the trial court=s
adjudication determination by claiming that there was insufficient evidence to
support it.[2]  This Court
held that Athe statute
clearly provides that the trial court's decision to proceed with an
adjudication of guilt is one of absolute discretion and not reviewable by this
Court.@[3] 
Faced with another sufficiency of the evidence challenge in Wright v. State,[4]
the Court cited Williams for the proposition that Ano appeal may be taken from
the hearing in which the trial court determines to proceed with an
adjudication of guilt on the original charge.@[5] 
The Court gave no explanation for the different wording used to phrase the rule
originally expressed in Williams.  Subsequent cases cited both Williams
and Wright in holdings or dicta to variously say that the
defendant could not appeal the adjudication Adetermination,@ Adecision,@
Ahearing,@ or Aproceedings.@[6] 
What was known for sure from the holdings in these cases was that the defendant
could not challenge on appeal the rationale for the trial court=s determination.  But the
wording of these opinions certainly suggested a broader prohibition of appeal.

Phynes
v. State[7] appears to be
the first case in which this Court clearly addressed a challenge to a trial
court=s adjudication
decision based, not upon a dispute with the trial court=s rationale for adjudication, but upon alleged
errors in the adjudication proceedings.  In that case, the defendant complained
that the trial court conducted the adjudication hearing while defense counsel
was absent.[8]  In holding
that the deferred adjudication statute deprived appellate courts of
jurisdiction to address the defendant=s
complaint, we said:

[A]s there is
nothing in the Texas Constitution which guarantees the right to appeal a
criminal conviction, that right is only as provided by the legislature. It
naturally follows that when a legislative enactment says an accused may not
appeal a determination to adjudicate, there is no right to do so. Therefore,
even if appellant's right to counsel was violated, he may not use direct appeal
as the vehicle which to seek redress.[9]              

 








But we noted
that the defendant had claimed no error Awith
respect to the punishment portion of the trial court's judgment or the
proceedings after the adjudication.@[10] 
So, while Phynes barred consideration of an error that occurred during
the adjudication hearing, it did so in the context of an appellate claim
seeking to overturn the adjudication itself.  The opinion did not purport to
address an error occurring in those proceedings but impacting punishment, for
which a new punishment hearing was sought, as no such error was alleged. 
Moreover, the Court=s
use of the phrase Apunishment
portion of the trial court=s
judgment@ to identify
the issue not before it, instead of the phrase Apunishment
hearing@ or Apunishment proceedings,@ suggests that the Court
anticipated that appealable punishment error might include more than just those
errors occurring at the punishment stage of the case. 








In
Connolly v. State, the Court addressed a defendant=s claim that the State
failed to exercise due diligence in bringing the defendant to adjudication.[11] 
After discussing Williams, Wright, Phynes, and Olowosuko,[12]
the Court stated: AIn
all these cases, we have tried to make clear that, given the plain meaning of
Article 42.12, ' 5(b),
an appellant whose deferred adjudication probation has been revoked and who has
been adjudicated guilty of the original charge, may not raise on appeal contentions
of error in the adjudication of guilt process.@[13]  Viewed in
isolation in its broadest possible meaning B
that no errors occurring during the adjudication phase of the process are
appealable B this
statement finds support in the text of only one of the four opinions discussed
(Wright) and is not required by the results arrived at in any of this
Court=s prior cases.
On the other hand, if the italicized phrase is understood to really mean Acontentions of error in the
adjudication of guilt process on the basis of which the defendant seeks relief
from the adjudication determination,@
Connolly=s
statement would be more in line with the opinions it discussed.  And the
defendant=s claim in Connolly
was consistent with claims made in prior cases in that the relief sought was
the overturning of the trial court=s
adjudication decision.

The
final case of importance is Kirtley v. State, where the Court made clear
that errors occurring at punishment were not covered by the statutory prohibition
against appealing the trial court=s
adjudication determination.[14]  The
defendant contended that he was entitled to a new punishment hearing because
the court reporter=s
record of the original punishment hearing was destroyed.[15] 
The Court decided that Phynes was Anot
controlling because the defendant there was attempting to appeal a denial of
counsel at the proceeding adjudicating guilt@ and said that it had Aspecifically noted that the defendant made no
complaint as to the >punishment
portion of the trial court's judgment or the proceedings after the
adjudication.=@[16]
While one might construe the italicized language as a manifestation of belief
that appealability turns upon the nature of the proceeding in which the error
occurs, one might also read the language as simply emphasizing that the error
in Phynes related to the adjudication of guilt, rather than to punishment.









It
is by way of these cases that the Court has now arrived at the question before
us.  Given the inexact language in the cases, it is not surprising that we are
now considering barring appeal of any and all issues that do not arise strictly
from the punishment phase of the proceedings.  It is time to return to the
language of the statute.

                                                        B.
The Statutory Language

Under Boykin v. State, we interpret a statute
in accordance with the plain meaning of its language unless the language is
ambiguous or the plain meaning would lead to absurd results that the
Legislature could not have possibly intended.[17] 
Here the statutory language is straightforward: it says that no appeal may be
taken from the Adetermination.@ It does not say that no
appeal may be taken from the adjudication Ahearing.@ The plain import of the
statutory wording is that a trial court=s
decision to adjudicate guilt is immune from appellate review.  Nothing in the
language of the statute prohibits the defendant from complaining on appeal that
his punishment was improperly assessed because of something improper occurring
during the adjudication hearing.








There
is another context in which we already classify errors that occur before the
punishment proceedings as punishment errors: capital cases.  Under Article
44.29(c), Aerror
affecting punishment only@
in a death penalty case results in a new punishment hearing, rather than an
entire new trial.[18]  In Ransom
v. State, this Court held that voir dire error, which obviously did not
occur at the punishment stage, was nevertheless Aerror
affecting punishment only@
where the error involved a challenge for cause on the basis that the juror
could not follow the law with regard to the future dangerousness special issue.[19] 
By contrast, in non-capital cases, where the relevant statute calls for a new
punishment hearing for those errors Amade
in the punishment stage of trial,@[20]
the Court determined that, in a trial on both guilt and punishment, voir dire
error relating to a punishment issue  required reversal of the conviction and a
new trial of the entire case because the error did not occur at the punishment
stage, as specified by the statute.[21]  The
Legislature knows how to attach appellate consequences to events occurring
during a specific stage of trial.  It could easily have said that no appeal
would lie from errors occurring during the adjudication hearing.  Instead, it
chose the more narrow prohibition against appealing the adjudication
determination. 

Moreover,
a broad Ahearing@appealability rule
undercuts the right of appeal that is recognized in the deferred adjudication
statute. As set out above, '5(b)
guarantees that, after adjudication, the defendant=s appeal will take place as if adjudication
had never been deferred.  This generally means that the defendant gets to
appeal the imposition of punishment.  But the reality is that most evidence
relevant to punishment is also relevant to the trial court=s decision to adjudicate
guilt, and therefore will be admissible at the adjudication hearing.  A Ahearing@ rule allows for anomalous
results depending upon when the State decides to introduce a particular piece
of aggravating evidence.  The State=s 
decision to introduce particular evidence at the adjudication hearing could
result in depriving the defendant of punishment issues that would have been
appealable had adjudication not been deferred, contrary to the Aas if the adjudication of
guilt had not been deferred@
language of the statute.








The
Court=s hybrid Adirectly and distinctly
relates to punishment@
approach is better than a straight Ahearing@ rule, but because so much
evidence that is relevant to punishment is also relevant to the adjudication
determination, very few things will satisfy the distinctness requirement.  As
with the Ahearing@ rule, the hybrid rule will
cause appealability to turn upon when the State happened to introduce certain
aggravating evidence. 

The
hybrid rule also turns the straightforward sentence, ANo appeal may be taken from this
determination,@ into a
complex inquiry into whether a particular claim, despite its presentation at
the adjudication phase, distinctly relates to punishment.  The Court says that
the proper resolution of the case Alies
on the fifty-yard line,@
but in my opinion, and with all due respect, this is not a fifty-yard-line
statutory provision.  This is the type of statutory provision that suggests
application of a bright-line rule.  And the Arelief
sought@ approach is a
bright-line rule that is easy to apply.

The
Court further contends that a rule without the distinctness requirement would Aeviscerate the '5(b) bar on direct appeals
of the decision to adjudicate.@ 
It is true that a Arelief
sought@ rule would
permit appeal of many more issues than would the hybrid rule, but the statute
already contemplates the possibility of an appeal of punishment issues in any
case in which guilt is adjudicated.  And more to the point, I think the Arelief sought@ rule gives effect to the
narrow language of the '5(b)
bar.  The bar is not against appealing certain issues.  It is against appealing
a certain disposition.

                                                                   C.
Conclusion

Loose
language in an opinion can take on a life of its own.  The touchstone of
statutory interpretation must always be the statute itself, and language found
in a prior opinion must be evaluated in light of the statute and the fact
situation presented in the case.  The trial court=s
Adetermination@ is what the statute says
cannot be appealed, and prior cases barring appeal have all dealt with attempts
to invoke appeal to undo a trial court=s
adjudication determination.








I
conclude that appealability under '5(b)
turns upon the relief sought.  Claims that seek to overturn the adjudication
determination are not appealable, but claims that seek a new punishment hearing
are.

In
the case before us, part of applicant=s
ineffective assistance claim alleged that the children=s testimony impacted the trial court=s assessment of punishment,
and as a result entitled applicant to a new punishment hearing.  To the extent
it made such an allegation, the claim sought relief in the form of a new
punishment hearing and was appealable.

I
respectfully dissent.

Keller, Presiding Judge

Date filed: November 9, 2005

Publish

 

 

 

 

 

 

 

 









[1] 
Tex. Code Crim. Proc., Art.
42.12, '5(b).





[2] 
592 S.W.2d 931, 932 (Tex. Crim. App. 1979).





[3] 
Id. at 932-933 (emphasis added).





[4] 
592 S.W.2d 604, 605 (Tex. Crim. App. 1980). 





[5] 
Id. (emphasis added).





[6] 
Shields v. State, 608 S.W.2d 924, 925 (Tex. Crim. App. 1980)(dicta:
Aproceedings@); McDougal v. State,
610 S.W.2d 509, 509 (Tex. Crim. App. 1981)(dicta: Adecision@); Daniels, 615
S.W.2d 771, 771 (Tex. Crim. App. 1981)(sufficiency of the evidence claim: Ahearing@); Contreras v.
State, 645 S.W.2d 298, 298 (Tex. Crim. App. 1983)(refusing petition for
discretionary review with summary statement that court of appeals did not have
jurisdiction over the appeal, grounds for appeal not revealed in the opinion); Russell
v. State, 702 S.W.2d 617, 618 (Tex. Crim. App. 1985)(grounds concerning
revocation of probation and entry of adjudication of guilt: Ahearing@); Ex parte Hernandez,
705 S.W.2d 700, 702 (Tex. Crim. App. 1986)(dicta: Adetermination@); Olowosuko v. State,
826 S.W.2d 940, 941-942 (Tex. Crim. App. 1992)(contending that conditions of
probation were vague and unenforceable, or were not violated: Adetermination,@ Adecision@).





[7] 
828 S.W.2d 1 (Tex. Crim. App. 1992).





[8] 
Id. at 1.





[9] 
Id. at 2.





[10] 
Id. at 1 n. 1.





[11] 
983 S.W.2d 738, 740 (Tex. Crim. App. 1999).





[12] 
Connolly, 983 S.W.2d at 740-741.





[13] 
Id. at 741 (emphasis added).





[14] 
56 S.W.3d 48 (Tex. Crim. App. 2001).





[15] 
Id. at 50.





[16] 
Id. at 51 (emphasis in original).





[17] 
818 S.W.2d 782, 785 (Tex. Crim. App. 1991).





[18] 
Tex. Code Crim. Proc., Art.
44.29(c)(AIf any court
sets aside or invalidates the sentence of a defendant convicted of an offense
under Section 19.03, Penal Code, and sentenced to death on the basis of any
error affecting punishment only, the court shall not set the conviction aside
but rather shall commence a new punishment hearing . . . A)





[19] 
920 S.W.2d 288, 297-298 (Tex. Crim. App. 1996)(opinion on rehearing), cert.
denied, 519 U.S. 1030 (1996) .





[20] 
Art. 44.29(b).





[21] 
Carson v. State, 6 S.W.3d 536 (Tex. Crim. App. 1999).